OPINION
{¶ 1} Curtis Wilson was convicted by a jury in the Dayton Municipal Court, Criminal Division, of public indecency, in violation of R.C.2907.09(A)(1), a fourth degree misdemeanor. He was sentenced to thirty days in jail, all of which was suspended, and to one year of unsupervised probation. He was also required to pay a $250 fine and not to return to the establishment where the conduct occurred. Wilson appeals from his conviction, raising three assignments of error.
 {¶ 2} I. "DEFENDANT-APPELLANT CURTIS WILSON'S CONVICTION FOR PUBLIC INDECENCY WAS SUPPORTED BY INSUFFICIENT EVIDENCE OF GUILT AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} In his first assignment of error, Wilson claims that his conviction was based on insufficient evidence and was against the manifest weight of the evidence.
 {¶ 4} "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541, citing Black's Law Dictionary (6th Ed. 1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in the light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421,430, 1997-Ohio-372, 683 N.E.2d 1096, citing Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed. 2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 5} In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175.
 {¶ 6} Dayton police officer Jon Zimmerman provided the sole testimony at trial, which revealed the following facts.
 {¶ 7} At approximately 6:50 p.m. on October 5, 2004, Officer Zimmerman and Officer St. Clair went to McCook's Theater, located at 1267 North Keowee Street in northeast Dayton, to ascertain if anything illegal was going on inside the business as part of a "routine business check." Zimmerman had previously made several arrests for indecent exposure inside McCook's, as well as several arrests outside of the building for prostitution, loitering to solicit prostitution, and drug offenses. At the time, Zimmerman was dressed in a police-issued bike uniform, which identified him as a police officer.
 {¶ 8} Zimmerman and St. Clair entered through the front door and walked through an area of the business that sells adult movies and novelties. The officers proceeded through a turnstile and doorway into an adult video area where patrons can pay to watch adult movies. In this area, there are four aisles of video viewing booths, none of which have doors. There are several signs stating that certain activity, including exposure of private parts and masturbation, will not be tolerated. On the interior walls are signs indicating the movie titles for the booths. Zimmerman indicated that, if one were to walk past the video viewing area, there is a section which has female dancers who are separated from the patrons by glass and the patrons can pay to have the glass go up for a period of time.
 {¶ 9} Upon entering the video viewing area, Zimmerman walked along the south aisle while St. Clair walked along the north wall. As Zimmerman walked down the aisle, he "caught a glimpse of Mr. Wilson's left arm moving up and down," which caught his attention. Zimmerman looked again and observed Wilson holding his penis in his hand. Zimmerman stepped into the booth and told Wilson to put his penis away and step into the hall area. Wilson complied and began to tuck in his shirt. When he stepped into the hall, Wilson immediately stated, "I'm sorry. I'm sorry. I'll never come back here again" and "I'm going to lose my job." Zimmerman informed Wilson that he was under arrest for public indecency. The officer then told Wilson that they were going to his cruiser where some paperwork and possibly a request for summons would be filled out. Zimmerman also informed him that he would be "nuisance abated" from McCook's, meaning that Wilson would not be allowed to return for 365 days. Zimmerman and St. Clair walked Wilson out of the building.
 {¶ 10} Wilson was charged with public indecency, in violation of R.C.2907.09(A)(1), which provides: "(A) No person shall recklessly do any of the following, under circumstances in which his or her conduct is likely to be viewed by and affront others, not members of his or her household: (1) Expose his or her private parts, or engage in masturbation[.]" Wilson contends that the state failed to present sufficient evidence that he was, in fact, masturbating and that his conduct occurred under circumstances likely to affront a reasonable customer at McCook's.
 {¶ 11} Upon review of the record, we have no difficulty finding that the state presented sufficient evidence that Wilson engaged in masturbation or exposed his private parts at McCook's. As stated supra, Zimmerman testified that he observed Wilson's left arm "moving up and down" and, upon further investigation, saw Wilson holding his penis in his hand. Zimmerman also testified as to whether Wilson had been circumcised. Such evidence was sufficient to establish that Wilson had exposed his private parts or was engaged in masturbation, within the meaning of R.C. 2907.09(A).
 {¶ 12} Wilson contends that the jury should have discredited Zimmerman's testimony. He notes that Zimmerman had testified that there was no door and no chain on the booth and "anybody could just walk into any of them." Wilson argues that, contrary to Zimmerman's testimony, photographs of McCook's reveal that there are chains attached to the booth so that patrons can bar the entrance to the booths when occupied. Wilson further asserts that Zimmerman likely did not observe any sexual activity, considering the officer's testimony that he was only able to see a portion of Wilson in the booth. Wilson also points to Zimmerman's testimony that he had not seen the videos shown in the booth and could not say what was on the videos.
 {¶ 13} Although the jury could have chosen to discredit Zimmerman's testimony in its entirety, it also could have reasonably found — and apparently did find — Zimmerman's testimony to be credible in most respects. The officer repeatedly testified that he could see the left half of Wilson's body, including his left hand. The photographic evidence supports Zimmerman's testimony that the left side of an individual seated in a booth could be visible from outside the booth. The fact that Zimmerman testified as to whether Wilson was circumcised buttressed his assertion that he saw Wilson's genitalia. The jury could have also reasonably concluded that Zimmerman was testifying truthfully when he indicated that he had not seen the videos shown in the booth. Zimmerman indicated (as demonstrated by Wilson's photographic evidence) that the video screen was directly across from the chair, i.e., along the wall with the doorway; thus, the video being shown was not visible from the entrance to the booth. Finally, although the photographs showed a chain available to hang across the entrance to the adult video booths, the jury could have believed there was no chain across the doorway of Wilson's booth or that Zimmerman was merely mistaken as to this fact. We afford great deference to the factfinder's credibility determinations. See Statev. Sherrill (Jan. 28, 2000), Montgomery App. No. 17359; State v. Reed,155 Ohio App.3d 435, 445, 2003-Ohio-6536, 801 N.E.2d 862. Based on the record, we cannot conclude that the jury clearly lost its way in crediting Zimmerman's testimony and concluding that Wilson had exposed his private parts or engaged in masturbation at McCook's.
 {¶ 14} Next, Wilson claims that the state failed to provide sufficient evidence that patrons of McCook's were likely to be affronted by masturbation. To support his assertion, Wilson first points to the nature of the store itself, noting that the store offers adult videos and novelties for sale and provides on-premises adult entertainment. Wilson argues: "Given these offerings, McCook's customers come to the store for the sole purpose of viewing and purchasing sexually explicit adult entertainment. It is therefore unlikely that they would be affronted by observing sexual activity, as they are there explicitly to see such behavior." Second, Wilson emphasizes that signs near the entrance to the viewing booth area warn customers that they will be exposed to sexually explicit activity and should not enter if that conduct will offend them. He further points out that customers must pay a fee to enter the area, ensuring that those who would be affronted do not enter the booths. Finally, Wilson notes that the configuration of the booths protects customers from being exposed unwittingly to sexual behavior.
 {¶ 15} We acknowledge that, due to the sexually explicit nature of the products and entertainment at McCook's, the jury could have concluded that customers of McCook's might have expected other patrons to masturbate in the adult video booths and that customers likely would not be affronted by that behavior. However, the jury was not required to reach that conclusion. In State v. Morman, Montgomery App. No. 19335, 2003-Ohio-1048, we addressed whether the defendant's conduct of masturbating in an adult video booth at McCook's (the same establishment at issue herein) was likely to affront others. We stated: "We also find that Morman's conduct would be likely to affront those patrons who might have viewed it. In this situation, unlike that in a nudist colony, which is referenced in the commentary of R.C. 2907.09, it is likely that patrons wishing to view naked dancing ladies would be affronted by the view of a naked man. Similarly, a patron wishing to see an adult movie would likely be affronted by viewing male nudity in the booth next door." Id. at ¶ 18.
 {¶ 16} Although Zimmerman's investigation of McCook's was prompted by a routine business check rather than complaints of sexual activity occurring at the store, we believe that the jury could have reasonably concluded that masturbation or other sexual activity by patrons would not have been welcome by other customers. Zimmerman testified that there were signs along the adult video booths indicating that certain activity, including exposure of private parts and masturbation, would not be tolerated. Due to these warnings, the jury could have reasonably concluded that engaging in those activities would have affronted others who patronize the store, even though those same patrons welcomed other sexually explicit entertainment. Thus, we conclude that the state satisfied its burden of presenting sufficient evidence that Wilson's conduct occurred under circumstances likely to affront others.
 {¶ 17} Considering that the jury found Wilson to have committed public indecency, it apparently concluded that other patrons of the video booth area, although un-phased by exposure to explicit videos, would likely by affronted by exposure to masturbation by another patron. As stated above, we afford great deference to the factfinder's credibility determinations. We cannot conclude that the jury clearly lost its way in reaching its conclusion that masturbation in a video booth at McCook's was likely to affront other patrons. Accordingly, upon review of the record, Wilson's conviction was based on sufficient evidence and was not against the manifest weight of the evidence.
 {¶ 18} The first assignment of error is overruled.
 {¶ 19} II. "DEFENDANT-APPELLANT CURTIS WILSON WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS."
 {¶ 20} III. "PROSECUTORIAL MISCONDUCT PREJUDICED DEFENDANT-APPELLANT CURTIS WILSON'S RIGHT TO A FAIR TRIAL."
 {¶ 21} In his second assignment of error, Wilson claims that he was denied the effective assistance of counsel when his attorney failed to object to questions and arguments by the prosecutor concerning whether individuals at McCook's for non-retail purposes, such as paramedics and city officials, were likely to view the inside of the video booths and be offended by masturbation. In his third assignment of error, Wilson claims that the prosecutor engaged in misconduct when he questioned Zimmerman about those individuals and argued that were likely to be offended by masturbation. Because of the interrelatedness of these assignments of error, we will address them together.
 {¶ 22} In order to demonstrate ineffective assistance of counsel, Wilson must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S at 694; Bradley, 42 Ohio St.3d at 142.
 {¶ 23} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. SeeStrickland, 466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.; Statev. Parker, Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 24} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420, 2000-Ohio-187, 749 N.E.2d 300, citing State v.Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982), 455 U.S. 209, 219,102 S.Ct. 940, 947, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See State v. Loza (1994),71 Ohio St.3d 61, 78, 1994-Ohio-409, 641 N.E.2d 1082. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. Darden v. Wainwright (1986),477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 25} During the state's case, the prosecutor asked Zimmerman, without objection, whether emergency personnel, such as paramedics or firefighters, would need to walk by the video booths to get to the live dancing area in the back of the establishment. The prosecutor also asked, without objection, whether city inspectors would also need to go into the video booth area. Zimmerman responded affirmatively to both questions. During closing argument, the prosecutor, without objection, stated:
 {¶ 26} "* * * [T]here could be a number of people who could see this and likely be affronted: police officers and firemen and paramedics and inspectors and perhaps even the gentleman who would go see a lady dancer might not want to see a man masturbating himself as they go back there. That might not be what they are into at this time. * * * The place must have cleaning people and they would have to walk through this area. They could be affronted by it."
 {¶ 27} In State v. Roberts, Montgomery App. No. 19035, 2002-Ohio-2163, we stated that the phrase "is likely to be viewed by and affront others" suggests that "rather than using a reasonable person or man of common intelligence standard, the statute contemplates a determination whether individuals who are likely to view the conduct would likely be affronted if they see it." Id. We clarified that "[t]hose persons would consist of persons who patronize the type of business establishment [where the conduct occurred], not the generic `reasonable man.'" Id.
 {¶ 28} We agree with Wilson that the state improperly questioned Zimmerman about whether non-patrons, such as law enforcement officers, inspectors, or emergency personnel, might enter the adult video booth area and view the prohibited conduct. As we stated in Roberts andMorman, the standard under R.C. 2907.09(A)(1) is whether individuals who patronize the establishment where the conduct occurred are likely to be affronted. We supported this interpretation by noting that the commentary to the statute states that persons who frequent a nudist camp are not likely to be offended by the nudity of others around them. In light of the commentary, it would be illogical to permit, for example, the prosecution of a nudist at a nudist camp based on testimony that law enforcement personnel, paramedics, or city inspectors might occasionally enter the nudist camp in the performance of their duties, view the nudity, and be affronted by the conduct.
 {¶ 29} The testimony and argument that law enforcement personnel, paramedics, and city officials would enter the adult video booth area as part of their duties muddied the water as to whether those individuals could be considered to be individuals likely to "patronize" the establishment. During deliberations, the jury expressed their confusion by submitting a question to the court, asking "Can you brake [sic] down the reasonable person or persons of common intelligence is not the generic reasonable person who's the reasonable person (the generic)?" The court construed this question as "Who's the reasonable person, the generic?" The court answered this question by reiterating its instruction that "whether the defendant's conduct was likely to be viewed by and affront others must be determined according to how a reasonable person or a person of common intelligence, who patronizes the type of business establishment defendant was in, would view the conduct alleged in this case. The reasonable person or person of common intelligence is not the generic reasonable person but consists of persons who patronize the type of business establishment that defendant was in." The court also repeated the instruction on reasonable doubt.
 {¶ 30} In the absence of objection to either the improper questioning or argument, prosecutorial misconduct can only be a basis for reversal if the misconduct rises to the level of plain error. Civ.R. 52(B); State v.Isaac, Montgomery App. No. 20662, 2005-Ohio-3733, ¶ 24. Where plain error analysis is utilized, the question is whether, absent prosecutorial misconduct, the result of the trial would have clearly been different.State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804; Isaac, supra, at ¶ 24.
 {¶ 31} We cannot so conclude. We have concluded in the first assignment of error that a jury could have found that McCook's patrons would likely be affronted by Wilson's conduct. In answering the jury question, the trial court limited the jurors' frame of reference to McCook's patrons. Jurors are presumed to follow the court's instructions. Thus, it is not at all clear that, absent prosecutorial misconduct, Wilson would have been acquitted.
 {¶ 32} Moreover, although we agree with Wilson that his counsel should have objected to the prosecutor's questioning and argument, we likewise cannot conclude that Wilson was prejudiced by his attorney's failure to do so. Again, because the state provided evidence that Wilson's conduct was likely to be viewed by and affront other patrons at McCook's and the jury instructions limited consideration of the "reasonable person" to those patrons, we cannot conclude that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. See Bradley, 42 Ohio St.3d at 142, quotingStrickland, 466 U.S. at 694.
 {¶ 33} The second and third assignments of error are overruled.
 {¶ 34} The judgment of the trial court will be affirmed.
Brogan, P.J. and Grady, J., concur.