OPINION
{¶ 1} Defendant-appellant John M. Przybyla appeals from his conviction and sentence for Domestic Violence. Przybyla contends that his conviction is not supported by the evidence, and is against the manifest weight of the evidence. We conclude that the testimony of the alleged victim, Michelle Przybyla, to whom John Przybyla was *Page 2 
married at the time, is sufficient to support the conviction. After reviewing her testimony, and the testimony of the Przybylas' daughter, Rebecca, who testified on her father's behalf, we conclude that the conviction is not against the manifest weight of the evidence.
 {¶ 2} Przybyla further contends that the trial court erred by admitting in evidence four sets of photographs of Michelle, the victim. Przybyla contends that these exhibits were not properly authenticated. We conclude that two of them were properly authenticated, and the remaining two, like the others, merely show that Michelle was bruised, a fact that Przybyla does not dispute — indeed, his witness acknowledged that Michelle was bruised — so that any error in the admission of these photographs appears to be harmless. Przybyla also contends that the chain of custody of these photographs was not established, but this was not the basis for his objection at trial.
 {¶ 3} Finally, Przybyla contends that the trial court erred by denying his request to be allowed to cross-examine Michelle, after her direct testimony, by using a statement Michelle had given to the police, which was allegedly at odds with her direct testimony. The trial court found no discrepancy that would justify the use of the prior written statement to cross-examine Michelle. The only discrepancy identified by Przybyla — that one of his four blows was by his forearm striking Michelle's upper body instead of his hand striking her upper body — is minor. Even if we could say that the trial judge erred by dismissing this discrepancy as not sufficiently significant to justify use of the statement to cross-examine the witness, since this was a bench trial, the trial judge was the finder of fact, and obviously would not have been impressed, as the finder of fact, with this discrepancy in assessing Michelle Przybyla's credibility. Therefore, the error, if *Page 3 
any, was harmless.
 {¶ 4} Because we find no prejudicial error, the judgment of the trial court is Affirmed.
 I {¶ 5} John and Michelle Przybyla were in their bedroom at one o'clock on a Sunday morning, becoming somewhat anxious about their sixteen-year-old daughter, Rebecca, who had been attending the Centerville High School prom. Michelle used her cell phone to contact her daughter. Mother and daughter disagreed about whether Rebecca should be at the home of two sixteen-year-old boys at that time of night, even though Rebecca asserted that the resident mother of one of the boys was present. What happened next is addressed in Michelle Przybyla's testimony as follows:
 {¶ 6} "I said well, that doesn't matter, I said, it is not appropriate for you to be in the home of a sixteen (16) year old boy with two sixteen (16) year old boys at one o'clock in the morning. She goes, no mom, it's okay. I said no, it's not okay, I want you to come home now. No mom, it's okay, and after about twenty (20) times of that, I just, I got angry and I said, Becky get the hell out of that house right now. At which time John got up and he lashed out at me full force across the top of my chest.
 {¶ 7} "Q. Now you, you made a swinging motion with your arm. What exactly, what did his arm do, and how did it come in contact with your body?
 {¶ 8} "A. It contacted, his whole forearm contacted my, the front of my chest and my shoulder.
 {¶ 9} "Q. Okay. *Page 4 
 {¶ 10} "A. On my right hand side.
 {¶ 11} "Q. Okay. Were you sitting up or laying [sic] down when this happened?
 {¶ 12} "A. I was sitting up in bed.
 {¶ 13} "Q. Okay, and then what happened?
 {¶ 14} "A. Then my arm lashed out and I, and got him, and I said stop it. Well, meanwhile Becky is still on the phone with me, and she says stop it? And I said, oh, before I could say anything, John got up, balled up his fist and punched me as hard as he could in my right arm.
 {¶ 15} "Q. Okay.
 {¶ 16} "A. And I said, I just looked at him incredulous and I said, why don't you just go to sleep? Meanwhile, I'm still on the phone and, and Becky goes, go to sleep? And I said no, I'm not talking to you, I'm, your, your father wants to beat the heck out of me. And she goes, oh, probably cause he doesn't agree with you. And I said well, that may very well be, but I said I need you to come home right now. Well instantly, John is like gets up on his knees on the bed looking very furious. He put up both his fists, he looked at me, and he said I'm ready to fight, do you want to fight? I'm going to fight right now. And I just looked at him incredulous, and he balled up his fist and hit me in exactly the same place on my right arm that he had already hit me with full force. And I continued to look at him incredulous that he would do that, at which time he then got up off the bed, walked around, grabbed a hold of both my arms and tried to pull me off the bed.
 {¶ 17} "Q. Okay.
 {¶ 18} "A. I didn't move, and he got angry because I didn't lash out. I didn't *Page 5 
retaliate, nothing. And he backed up and he balled up his fist again and hit me in the left arm."
 {¶ 19} At this point, John Przybyla left the bedroom. Michelle woke up in the morning and found him on the couch downstairs. Nothing was said about the altercation early Sunday morning, and the Przybylas continued about their normal routines, with John Przybyla leaving during the workday on Monday on a trip to Phoenix, and returning Friday.
 {¶ 20} Michelle Pryzbyla went to the hospital on the Tuesday morning following this early Sunday morning incident, because:
 {¶ 21} "Tuesday morning, I went [to the hospital] because I had no strength in my right arm. I couldn't pick up even a plate with my right arm. And every time I tried to breathe, my breath would catch, and my parents, who are in Michigan, were talking to me on the phone and they said, Mick, you got to go. You got to go and check, have it checked out because you might have some broken ribs."
 {¶ 22} As a result of Michelle's being examined at the hospital on the Tuesday morning following the incident, she was interviewed by police, and gave a written statement to police that same Tuesday morning. John Przybyla, after his return from Phoenix, was arrested and charged with one count of Domestic Violence, in violation of R.C. 2919.25, a misdemeanor of the first degree.
 {¶ 23} At trial, Przybyla objected to the admission in evidence of four sets of photographs depicting Michelle's injuries, but his objection was overruled.
 {¶ 24} Michelle Przybyla, the alleged victim, testified for the State. Rebecca Przybyla, the Przybylas' daughter, testified on behalf of her father. At the conclusion of *Page 6 
Michelle Przybyla's direct testimony, the following colloquy occurred:
 {¶ 25} "COURT: Thank you. Do you wish to inquire?
 {¶ 26} "MUES [representing defendant Przybyla]: Yeah, and can I review her written statement please? For purposes of inconsistencies that were stated. I'm going to review it and ask the Court to.
 {¶ 27} "COURT: Oh you're asking me if you can review it.
 {¶ 28} "MUES: Yes, I'm.
 {¶ 29} "COURT: I'm sorry, I thought you were asking Mr. Long if you can review it.
 {¶ 30} "LONG: That's what I thought he was asking.
 {¶ 31} "COURT: I misunderstood. For purposes of the record, Court's now conducting an in camera inspection in review of the statement. The Court has reviewed the statement of the witness made May 9, 2006 and finds that it is consistent with the testimony she has provided the Court here today."
 {¶ 32} Following a bench trial, the trial court found Przybyla guilty as charged, and sentenced him accordingly. From his conviction and sentence, Przybyla appeals.
 II {¶ 33} Przybyla's First Assignment of Error is as follows:
 {¶ 34} "THE TRIAL COURT'S FINDING THAT JOHN PRZYBYLA WAS GUILTY OF DOMESTIC VIOLENCE (O.R.C. § 2919,25(A)) WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 35} The appellate test for the sufficiency of the evidence is whether there is *Page 7 
testimony in the record that, if believed, would persuade the average mind, beyond reasonable doubt, of the defendant's guilt. State v.Jenks (1991), 61 Ohio St.3d 259. In our view, the testimony of Michelle Przybyla, the alleged victim, if believed, is sufficient to persuade the average mind of John Przybyla's guilt of the charged offense beyond reasonable doubt.
 {¶ 36} R.C. 2919.25(A) provides that: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "Physical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C.2901.01(A)(3). At the time of the alleged offense, Michelle Przybyla was married to, and living with, John Przybyla. She testified that John hit her four times on the early morning of Sunday, May 7, 2006 — one of those times, "as hard as he could." She testified further that by Tuesday morning, she had no strength in the arm where she had been struck, and could not pick up "even a plate" with that arm. A reasonable inference is that this impairment was caused by the blows inflicted by John Przybyla.
 {¶ 37} We conclude that the testimony of Michelle Przybyla, if believed, is sufficient to support John Przybyla's conviction for Domestic Violence. Accordingly, the First Assignment of Error is overruled.
 III {¶ 38} John Przybyla's Second Assignment of Error is as follows:
 {¶ 39} "THE TRIAL COURT'S FINDING THAT JOHN PRZYBYLA WAS GUILTY OF DOMESTIC VIOLENCE (O.R.C. § 2919.25(A)) WAS AGAINST THE MANIFEST *Page 8 
WEIGHT OF THE EVIDENCE PRESENTED."
 {¶ 40} In conducting a weight-of-the-evidence review, an appellate court must "review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Wilson, 2005-Ohio-5004, Montgomery County App. No. 20949, ¶ 5.
 {¶ 41} In his argument in support of this assignment of error, Przybyla contends that the testimony of the complaining witness, Michelle, is not credible. In assessing the credibility of conflicting testimony, as opposed to assessing the strength of competing inferences, an appellate court must give substantial deference to the finder of fact, who has seen and heard the witnesses. State v. Lawson (August 22, 1997), Montgomery App. No. 16288.
 {¶ 42} Przybyla points out that despite the fact that she has a medical condition that causes her to bruise easily, Michelle did not sustain any bruising on her chest, where she claims to have been struck. Michelle explained this by testifying that she takes Rutin to reduce her tendency to bruise, and that it has been effective.
 {¶ 43} Przybyla points out that his daughter, Rebecca, who testified on his behalf, did not hear any of the statements over the telephone that were reflective of her father striking her mother. But when asked at one point whether she was "able to hear her [mother] clearly throughout this whole conversation," Rebecca responded: "She could have like turned her head and said it, but I didn't hear it." Rebecca also testified that she was unable to overhear her father's end of the conversation with her mother. *Page 9 
 {¶ 44} Przybyla next argues that Michelle's claim that he struck her four times is undermined by her having failed to leave the bedroom and seek a place of safety. Michelle explained this in her testimony:
 {¶ 45} "Q. Defense counsel asked you why you didn't just get up and walk away from the situation. Did you think getting up and walking away would eliminate the danger?
 {¶ 46} "MUES: Objection, leading.
 {¶ 47} "COURT: Overruled, I'll permit it as it's stated.
 {¶ 48} "A. I was, I was afraid that if I got up and walked away, he would be more angry. I was based in the bed at that point and time, and I felt more safe being there especially when he got up and went around out. I was afraid if I got up out of bed, he'd have more control over taking me to the ground or whatever.
 {¶ 49} "Q. So you felt safest where you were at that moment.
 {¶ 50} "A. More safe, yes."
 {¶ 51} Przybyla next argues that Michelle's testimony is not credible because she testified that the telephone conversation with Rebecca that preceded and overlapped the alleged altercation was mainly a calm conversation, whereas Rebecca testified that her mother was yelling at her nearly the entire time. But Rebecca did acknowledge that her telephone conversation with her mother started off calmly, estimating that the first five minutes of the conversation was calm. Even if we were inclined to conclude that the trial court, as the finder of fact, should have credited Rebecca's testimony over Michelle's where their testimony was in conflict, we do not see any great conflict between their accounts of their telephone conversation. At most, they differ in their *Page 10 
estimates of the duration of the beginning, calm portion of their conversation, before it turned strident, and estimates of time, particularly when one is stressed, are notoriously unreliable.
 {¶ 52} Przybyla alludes to the fact that Michelle did not go to the hospital until Tuesday morning, two days after her alleged injuries, but she explained this in her testimony when she said that she experienced the extreme weakness in her arm on Tuesday morning, and her parents that morning urged her to seek medical attention because she might have sustained a cracked rib.
 {¶ 53} Przybyla alludes to the fact that Michelle withdrew $56,000 from a joint checking account the same day that she signed the complaint against him for Domestic Violence. But Przybyla failed to establish this fact at trial. A question designed to elicit this fact was objected to, and the objection was sustained. Thereafter, Przybyla established that Michelle went to see a divorce lawyer, but only after she was served with divorce papers, about a month after the alleged assault.
 {¶ 54} We conclude that Michelle Przybyla's testimony is not inherently incredible, and that the trial judge, as the finder of fact, did not clearly lose his way in deciding to credit her testimony, or at least that part of her testimony describing the assault. John Przybyla's Second Assignment of Error is overruled.
 IV {¶ 55} Przybyla's Third Assignment of Error is as follows:
 {¶ 56} "THE PHOTOGRAPHS SUBMITTED AS EVIDENCE AT TRIAL WERE NOT PROPERLY AUTHENTICATED AND SHOULD NOT HAVE BEEN ADMITTED AS *Page 11 
EVIDENCE BY THE TRIAL COURT."
 {¶ 57} Groups of photographs offered by the State were admitted, over objection, as Exhibits A, B, C and D. We are somewhat hampered, in considering this assignment of error, by the fact that Exhibits C and D, which were admitted in evidence and considered by the trial court, have been lost, through no apparent fault of either party, and are not available for review by this court. It appears from the testimony identifying them, that Exhibits C and D were photographs of Michelle taken about a week after the alleged assault. Exhibits A and B were taken at the hospital on the Tuesday morning following the early Sunday morning alleged assault. Therefore, these photographs, which are in the record, are the most proximate to the alleged assault, and are arguably the most probative of the bruising that Michelle allegedly sustained as a result of the assault.
 {¶ 58} As part of his attack on the admissibility of the photographs, Przybyla asserts that no chain of custody was established. But this was not part of Przybyla's objection at trial to the admission of these exhibits:
 {¶ 59} "COURT: Mr. Mues, any objection sir?
 {¶ 60} "MUES: Improper foundation, yes, we would object. There's nobody here to certify the reliability of those photographs, what camera was used, and the time and date and place of the, of the photographs being taken."
 {¶ 61} In our view, any challenge to the chain of custody of these exhibits was not sufficiently preserved for appellate review.
 {¶ 62} What is preserved is the issue of whether an adequate foundation was laid for the reliability, or accuracy, of the photographs; i.e., whether they accurately depict *Page 12 
what they purport to depict. With respect to Exhibits A and B, we are satisfied with the foundation laid in the testimony of Michelle Przybyla:
 {¶ 63} "Q. Let me show you what's been marked as State's Exhibit A and B, which I previous, previously shared with defense counsel. Take a minute, and look at the pictures contained on State's Exhibit 8 [sic], A and B.[1]
 {¶ 64} "A. Yeah.
 {¶ 65} "Q. Do you recognize those pictures?
 {¶ 66} "A. Yes I do.
 {¶ 67} "Q. Is that you in those pictures?
 {¶ 68} "A. Yes it is.
 {¶ 69} "Q. Do those pictures fairly and accurately represent the condition of your arm, specifically the bruising, as it existed on that Tuesday that you went to the hospital?
 {¶ 70} "A. Yes it does."
 {¶ 71} By contrast, there does seem to be a deficiency in the foundation laid for Exhibits C and D:
 {¶ 72} "Q. Let me show you State's Exhibit C and D. Take a minute to review those. Looking at State's Exhibit C and D, what is pictured there?
 {¶ 73} "A. It's the bruises and, they have gotten much worse.
 {¶ 74} "Q. So it's the same injuries that were caused by your husband on the evening at one in the morning on the 7th?
 {¶ 75} "A. Yes they are." *Page 13 
 {¶ 76} Missing is any testimony that Exhibits C and D fairly and accurately represent the bruises depicted therein. Therefore, it was error for the trial court to have allowed these exhibits, C and D, into evidence in the face of an objection based upon the lack of a proper foundation.
 {¶ 77} Nevertheless, we conclude that the error in the admission of Exhibits C and D is not sufficiently prejudicial to merit reversal. That Michelle Przybyla sustained bruises to her arm on or before Tuesday, May 9, 2006, sufficient to lead her to a hospital for examination and treatment, does not appear to be disputed, is borne out by her testimony, corroborated by Exhibits A and B, and by the testimony of Rebecca Przybyla. Exhibits C and D are merely cumulative with all of the other evidence of Michelle Przybyla's bruising. The disputed issue of fact is whether John Przybyla caused that bruising. Even though Exhibits C and D are not in the record, it is apparent that they cannot be probative on the issue of how the bruising depicted therein was caused. Therefore, we conclude that the error in admitting Exhibits C and D is harmless.
 {¶ 78} Przybyla's Third Assignment of Error is overruled.
 V {¶ 79} Przybyla's Fourth Assignment of Error is as follows:
 {¶ 80} "THE TRIAL COURT ERRED WHEN IT REFUSED TO PERMIT DEFENSE COUNSEL THE OPPORTUNITY TO CROSS EXAMINE MICHELLE PRZYBYLA REGARDING HER WRITTEN STATEMENT DATED MAY 9, 2006."
 {¶ 81} In support of this assignment of error, Przybyla contends that the trial court erred by refusing to permit his counsel to review the statement with the trial court to *Page 14 
point out any inconsistencies, as required by Crim. R. 16(B)(1)(g). The record is unclear whether Przybyla's trial counsel had access to Michelle's prior written statement when the in camera inspection occurred. It is clear that the trial court conducted the inspection, and found Michelle's prior written statement to be consistent with her testimony on direct examination.
 {¶ 82} The only discrepancy to which Przybyla directs our attention is that in the written statement Michelle Przybyla describes the first of the four blows as follows: "my husband slam-basted me with full force w/his hand above my right breast," whereas in her testimony she described that blow:
 {¶ 83} ". . . . At which time John got up and he lashed out at me full force across the top of my chest.
 {¶ 84} "Q. Now you, you made a swinging motion with your arm. What exactly, what did his arm do, and how did it come in contact with your body?
 {¶ 85} "A. It contacted, his whole forearm contacted my, the front of my chest and my shoulder.
 {¶ 86} "Q. Okay.
 {¶ 87} "A. On my right hand side."
 {¶ 88} We have not found a dictionary definition of the verb "to bast." From Michelle Przybyla's cross-examination testimony, where she also uses this verb, it is apparent that she uses it interchangeably with the verb "to hit."
 {¶ 89} From our review of the entire written statement Michelle Przybyla gave police on May 9, 2006, we are struck with how consistent it is with her direct testimony at trial. The discrepancy noted — John having hit her the first time with his hand versus with *Page 15 
his arm — appears inconsequential. We are not persuaded that the trial court erred in finding that Michelle Przybyla's prior written statement is consistent with her direct testimony at trial.
 {¶ 90} Even if the trial court did err in finding Michelle's prior written statement to have been consistent with her direct testimony, we would find the error harmless. The consequence of a finding of an inconsistency is that trial counsel is permitted to use the prior written statement to cross-examine the witness. This would have allowed Przybyla's trial counsel, at most, to have impressed upon the finder of fact that Michelle described the first blow she received slightly differently in the two accounts. Because this was a bench trial, the finder of fact was the same person — the trial judge — who found the difference in the two accounts to have been inconsequential for purposes of Crim. R. 16(B)(1)(g). Consequently, it is unlikely that the finder of fact would have reached a different conclusion in this case had Przybyla's trial counsel been permitted to use Michelle Przybyla's prior written statement in cross-examining her.
 {¶ 91} Przybyla's Fourth Assignment of Error is overruled.
 VI {¶ 92} All of Przybyla's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and BROGAN, J., concur.
[1] There is no Exhibit 8 in the record. *Page 1